# **EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Roadget Business Pte. Ltd.,        )
                                   )
        Plaintiff,                 )
                                   )
                                   )
    v.                             )   No. 24 C 115
                                   )
                                   )
The Individuals, Corporations,     )
Limited Liability Companies,       )
Partnerships, and                  )
Unincorporated Associations        )
Identified on Schedule A           )
Hereto,                            )
                                   )
        Defendants.                )

Memorandum Opinion and Order

In this suit, plaintiff alleges 17 defendants infringed several of its copyrights. I previously granted plaintiff an *ex parte* temporary restraining order ("TRO"), which includes an asset freeze. Several defendants ("Moving Defendants")[1] later appeared through counsel and moved to dissolve or modify the TRO, but I denied that motion. Moving Defendants now move for reconsideration of that denial and to dismiss the complaint and/or sever the Moving Defendants into separate cases.

---

[1] Moving Defendants include Defendant Nos. 1 (S H Baby), 6 (Free Loop), 7 (Be kind), 8 (Livi), 9 (Mi Fashion), 11 (Yeonhee women clothing), 13 (SYLP PLUS), 14 (SYLP), 16 (Dchen), and 17 (Huang Kangwei).

I.

As explained in my prior order, asset restraints are typically unavailable before judgment where a plaintiff seeks a money judgment. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 331–33 (1999). But where, as here, a plaintiff seeks an equitable remedy like disgorgement, an asset freeze may be appropriate. *See Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018) ("[T]he Court can permissibly freeze assets to protect a plaintiff's equitable remedies." (citations omitted)). Even then, "the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). Thus, "if the amount of the profits is known, then the asset freeze should apply only to that specific amount, and no more." *Id.* "To exempt assets from an asset freeze, '[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities.'" *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quoting *Luxottica USA LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 C 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015)).

Moving Defendants previously requested that I limit the asset freeze to what they asserted were the profits from the accused products. Profits are calculated by subtracting costs from revenue. In support of their revenue estimates, they submitted a declaration by one of their attorneys stating that Temu (the platform on which defendants sold the allegedly infringing products) produced a spreadsheet identifying the revenues obtained from sales of accused products on the platform. As to costs, Moving Defendants supplied declarations from their own business representatives providing cost estimates associated with sales of accused products. I denied the motion, expressing concern primarily with the unreliability of the cost figures. *See* ECF 58.

It is this order that Moving Defendants wish me to reconsider under Rule 59(e). *Cf. Fin. Servs. Corp. of Midwest v. Weindruch*, 764 F.2d 197, 198 (7th Cir. 1985) (noting that "an order granting a preliminary injunction is a judgment within the meaning of" Rule 59(e)). "Courts may grant Rule 59(e) motions 'to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time'" of the proceeding. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)).

Moving Defendants meet that standard here. First, they have come forward with more robust evidence regarding revenue, in the form of a custodial declaration produced by counsel for Temu

3

explaining--and attesting to the veracity of--the revenue data Moving Defendants submitted. *See* Casaceli Decl., ECF 62-1. This evidence comes directly from the platform from which the sales data originates, and it describes how the sales data was obtained, rendering it sufficiently reliable. Plaintiff offers no evidence in rebuttal, but complains that Moving Defendants could have submitted this evidence with their original motion. *See Miller*, 683 F.3d at 813 ("[Rule 59(e)] motions are not appropriately used to advance arguments or theories that could and should have been made before the district court rendered judgment or to present evidence that was available earlier." (citation and internal quotation marks omitted)). True enough, but evidence is not really "available" where a party did not have sufficient notice that it was necessary to achieve its preferred outcome. *See In re Prince*, 85 F.3d at 324 (evidence not previously "available" where "the parties did not have sufficient indication" it was required and thus "were not given an opportunity to collect evidence bearing on the question"). In "Schedule A" cases like this one, it is exceedingly rare for defendants to appear at all, much less to mount a vigorous challenge to the scope of a TRO. That leaves a relative dearth of precedent from which Moving Defendants could tailor their arguments. Combine that with the wide discretion district judges enjoy in fashioning TROs, *see Cassell v. Snyders*,

4

990 F.3d 539, 545 (7th Cir. 2021), and you have a recipe for uncertainty as to what evidence each particular judge will demand.[2]

Second, conditions have changed because the assets affected by the freeze have increased substantially. Moving Defendants point out that because the asset freeze applies to their accounts as a whole, and sales of the accused products have stopped since issuance of the TRO, the funds that have accumulated since then are from the sale of non-accused products. According to Moving Defendants' evidence from Temu, the amount frozen across all defendants' accounts as of February 1, 2024 was about $250,000, ballooning to over $1 million by the time Moving Defendants filed the present motion in mid-March. *Compare* Casaceli Decl. Exh. B, ECF 62-3 at 3 (identifying funds frozen per defendant as of February 1, 2024), *with id.* Exh. C, ECF 62-4 at 5 (same, as of March 13, 2024). Plaintiff does not dispute this. This evidence highlights the increasingly disproportionate harm inflicted by the asset freeze.

Third, Moving Defendants now request a modification of the TRO to the gross sales *revenue* obtained from the sale of each accused product, rather than the *profit*. That is important because

---

[2] There is also good reason to factor in the expedited, preliminary nature of the *ex parte* TRO's entry and Moving Defendants' initial challenge to it. It would be incongruous to hold a defendant in that position to the same standard as a party taking months to prepare a summary judgment brief.

5

it means there is no need to use the unsupported cost estimates I previously found unreliable.[3]

The foregoing discussion grounds my decision to modify the asset freeze in this case as to Moving Defendants (non-Moving Defendants have made no showing, so are not entitled to relief), and it is further bolstered by recent decisions by other judges in this district granting similar relief on similar evidence in cases brought by Roadget. *See* Order, *Roadget*, No. 24 CV 607, ECF 77; Minute Entry, *Roadget Bus. PTE LTD v. Individuals et al. Identified on Schedule A Hereto*, No. 1:24-cv-02015 (N.D. Ill. May 1, 2024), ECF 64. Moving Defendants' motion is granted.

## II.

Next, Moving Defendants argue they were improperly joined in this action. Joinder of defendants is appropriate if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Courts enjoy "considerable flexibility" in deciding whether

---

[3] In reducing the asset freeze to estimated revenue in a similar case brought by Roadget, another judge in this district commented that she would not have granted a reduction to estimated profits because, as I previously found, the evidence of costs submitted by defendants' representatives amounted to "an untested, one-sided account of a party." Order at 3 n.4, *Roadget Bus. Pte. Ltd. v. The Individuals et al. Identified on Schedule A Hereto*, No. 24 CV 607 (N.D. Ill. Apr. 16, 2024), ECF 77.

multiple defendants may be joined in a single action. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Whether joinder is appropriate is therefore highly case-specific.

Plaintiff calls this case one of "mass infringement" concerning the same platform (Temu) and the same harm (copyright infringement) inflicted upon the same entity (plaintiff). But these connections suggest nothing more than separate instances of infringement attributable to different defendants, not events arising out of the same transaction or occurrence. *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014) ("[C]ommitting the same type of violation in the same way does not link defendants together for the purpose of joinder." (citation and internal quotation marks omitted)). *Cf. Ilustrata Servicos Design, Ltda. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-05993, 2021 WL 5396690, at *2 (N.D. Ill. Nov. 18, 2021) ("Courts in this District have held that plaintiffs cannot satisfy Rule 20's requirements by merely alleging that multiple defendants have infringed the same patent or trademark." (collecting cases)). Though evidence against multiple defendants will come from Temu, the evidence itself--from the infringing product listings to the sales and profit data--will be largely unique to each defendant.

7

Plaintiff insists that findings of misjoinder are typically confined to cases with many more defendants than the 17 sued here. *See Art Ask Agency v. Individuals et al. Identified on Schedule "A"*, No. 21-CV-06197, 2021 WL 5493226, at *1 (N.D. Ill. Nov. 23, 2021) (finding misjoinder in case with 216 defendants); *NFL Props. LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-05522, 2021 WL 4963600, at *1 (N.D. Ill. Oct. 26, 2021) (same for 228 defendants). While the number of defendants may be relevant to determining whether joinder would promote or hinder judicial economy, *see Art Ask Agency*, 2021 WL 5493226, at *3, neither the Federal Rules nor the caselaw announce a numerical threshold.

Plaintiff also appeals to the reasoning in *Bose Corp. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 334 F.R.D. 511 (N.D. Ill. 2020). There, the court allowed joinder where defendants were alleged to have infringed on the plaintiff's trademark by selling counterfeit products. The court found sufficient overlap to permit joinder because it was the "swarm of attacks" plaintiff faced "that [was] the defining aspect of the harm" it claimed to have suffered. *Id.* at 517. But *Bose* is distinguishable from the circumstances here where the claims are of distinct infringement of various copyrights, not a single, well-known trademark. Indeed, the same judge who authored *Bose* found it inapplicable to a later case which, like this one, dealt with

8

"instances of infringement by distinct competitors." *Tang v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 23 C 4587, 2024 WL 68332, at *3 (N.D. Ill. Jan. 4, 2024). The court in *Bose* was also guided by the "practical consideration[]" that no defendant had yet appeared and that default judgment as to all of them was likely. *Bose*, 334 F.R.D. at 517. As discussed below, that impacts my consideration of the non-Moving Defendants, but it distinguishes *Bose*'s reasoning as to Moving Defendants.

Plaintiff also argues that severing the cases will come with efficiency costs. Even so, I must also be mindful that "presenting dozens or hundreds of defendants in one lawsuit actually undermines judicial economy, because this Court must evaluate the evidence submitted in support of liability and, eventually, damages." *Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 189 (N.D. Ill. 2020). Where, as here, unrelated defendants are alleged to have infringed various copyrights, it is difficult to see how judicial economy would be promoted by litigating the cases together. It would prejudice Moving Defendants to litigate this case collectively, given that the infringement inquiry will vary for each asserted copyright, and that they may differ in their preferred scheduling timelines, defense strategies, or motion practice.

It is plaintiff's burden to show joinder is appropriate, *id.* at 185, and for the foregoing reasons it has failed to do so. I

9

stress, however, that the outcome might be different in other Schedule A cases, depending on the particular facts of those cases and the arguments in play.

"The proper remedy" for improper joinder of defendants "is severance or dismissal without prejudice." *UWM Student Ass'n*, 888 F.3d at 864 (citation omitted). Severance is the better course here because dismissal would lift the TRO and open the possibility that the affected defendants would move the funds subject to the asset freeze out of plaintiff's reach. *See Mansoori v. Patel*, No. 17-cv-08846, 2022 WL 683667, at *2 (N.D. Ill. Mar. 8, 2022) ("Even dismissal without prejudice is an improper remedy if it would result in gratuitous injury to the plaintiff." (citing *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000))). In severing the cases, three pairs of Moving Defendants will be kept together[4]; the non-Moving Defendants will all remain joined in this action.[5]

---

[4] Moving Defendants acknowledge that Defendant Nos. 6 and 7, as well as Defendant Nos. 13 and 14, are owned by the same companies, respectively. Additionally, plaintiff observes that the same person--Zhong Mingjie--is "in charge" of the two companies that respectively operate Defendant Nos. 8 and 9, *see* Mingjie Decl., ECF 31-11 ¶ 3, and that the two list the same address on Temu, *see* ECF 31-3 at 5-6. These connections are sufficient for these pairs of defendants to be joined together.

[5] The non-Moving Defendants will not be severed because they cannot be said to have suffered any prejudice by misjoinder. *See Pink Floyd (1987) Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-04406, 2021 WL 7179622, at *1 (N.D. Ill. Oct. 21, 2021) (finding severance or dismissal inappropriate in part because defendants had not appeared and were therefore not prejudiced). Nor would severing them advance judicial economy,

10

III.

Accordingly, Moving Defendants' motion to reconsider and modify the TRO is granted. The parties shall submit to the court's proposed order inbox a modified TRO consistent with this order no later than two days after its entry. Moving Defendants' motion to dismiss and/or sever is granted in part. The non-Moving Defendants will remain joined in this action, and Moving Defendants will be severed, after modification of the TRO, into seven separate actions grouped as follows: Defendant No. 1; Defendant Nos. 6 and 7; Defendant Nos. 8 and 9; Defendant No. 11; Defendant Nos. 13 and 14; Defendant No. 16; and Defendant No. 17. The remainder of Moving Defendants' motion to dismiss is denied as moot; they may raise the arguments that pertain to each of them once they have been severed into new actions.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 30, 2024

---

given the prevalence of default in Schedule A cases. *See Bose*, 334 F.R.D. at 512 ("Probably none of the Defendants will ever make an appearance in this case and the default judgment process will determine the case's outcome in its entirety.").

11