UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Roadget Business Pte. Ltd., | |
| *Plaintiff,* | |
| v. | No. 24 CV 607 |
| The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto, | Judge Lindsay C. Jenkins |
| *Defendants.* | |

MEMORANDUM OPINION AND ORDER

Plaintiff Roadget Business Pte. Ltd. owns the popular Shein brand. It alleges that persons and entities largely located overseas sell products online that infringe its copyrights. To protect its rights, Roadget has filed several so-called "Schedule A" lawsuits in this district. As is common practice in Schedule A cases, *see BRABUS GmbH v. Schedule A*, 2022 WL 7501046, at *1 (N.D. Ill. Oct. 13, 2022), Roadget filed a complaint under seal and sought an *ex parte* temporary restraining order ("TRO"), which the Court granted. [*See* Dkt. 8, 16, 30, 31, 34, 35.] Unlike many Schedule A cases, however, some Defendants filed appearances and are actively litigating this case, including filing a motion to dismiss [Dkt. 85] and a motion to sever [Dkt. 107].[1] For the reasons stated below, the motion to dismiss is denied without prejudice, and the motion to sever is tentatively granted.

---

[1] Defendant Nos. 2, 4–6, 9–10, 12, 14–19, 22–27, and 29–31. [Dkt. 86 at n.1; Dkt. 108 at n.1.] Defendant Nos. 7 and 28 joined the motions but are no longer parties. [*See* Dkt. 128.]

## I. Motion to Dismiss

The Court begins with the motion to dismiss [Dkt. 85], which challenges the Court's personal jurisdiction and the sufficiency of Roadget's allegations as to exemplary damages, statutory damages, and attorney's fees. [Dkt. 86.]

### A. Personal Jurisdiction

Six Defendants—Nos. 2, 4, 12, 17, 23, and 25—move to dismiss under Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over them. [Dkt. 86 at 2–7.] The motion is denied.

#### 1. Legal Standards

*Personal Jurisdiction*

In federal question cases, federal courts can exercise "personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010) (citation omitted). When the relevant federal statute does not authorize nationwide service of process—as the Copyright Act does not—personal jurisdiction is proper if the defendant could be served under state law. *Id.*; *see Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997), *abrogation on other grounds recognized by Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014). The Illinois long-arm statute "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002) (citation omitted); *see* 735 ILCS 5/2-209(c). Because "[no] party urges that the Illinois due process analysis differs," the Court

"only consider[s] the requirements of federal due process." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 n.15 (7th Cir. 2022) (cleaned up).

The Fourteenth Amendment's Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (cleaned up). The Clause permits courts to exercise personal jurisdiction over an out-of-state defendant only if it has "sufficient minimum contacts with [the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (7th Cir. 2010) (cleaned up). Personal jurisdiction may be general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). Roadget does not argue that Defendants are subject to general jurisdiction in Illinois, so the Court considers only whether it has specific personal jurisdiction over Defendants.

Specific jurisdiction "covers defendants less intimately connected with a State [than general jurisdiction], but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). To establish specific personal jurisdiction over a defendant, the plaintiff must show that "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) [the] exercise of personal jurisdiction … comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021) (citation omitted).

*Rule 12(b)(2)*

A plaintiff need not "alleg[e] personal jurisdiction in the complaint, but once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (cleaned up). The weight of that burden depends on whether the court rules on the motion with or without holding an evidentiary hearing. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424 (7th Cir. 2010). When evaluating a personal jurisdiction challenge, "the court must decide whether any material facts are in dispute. If so, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged. Until such a hearing takes place, the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt*, 302 F.3d at 713 (citations omitted).

To determine if a plaintiff has made out a *prima facie* case of personal jurisdiction, the Court accepts the complaint's well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but where the defendant disputes the jurisdictional allegations by "affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found. v. Sanofi Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003) (citations omitted). If the plaintiff fails to do so, the presumption flips and the Court "will accept as true any facts in the defendants' affidavits that do not conflict with" evidence introduced

4

by the plaintiff. *Curry*, 949 F.3d at 393. Here, Roadget did not submit evidence of its own, so the question is whether there is a genuine dispute after accepting "allegations relating to personal jurisdiction as true except where the defendants refute them through undisputed affidavits." *Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011) (nonprecedential).

### 2. Allegations and Evidence

Two paragraphs of the complaint allege facts that are relevant to personal jurisdiction:

> 4. Defendants are business entities who, upon information and belief, reside mainly in foreign jurisdictions. Defendants operate e-commerce stores under the seller aliases identified on Schedule A and/or other aliases. Defendants conduct business in the United States and, on information and belief, have sold and continue to sell products to United States consumers, including in Illinois and this judicial district. …

> 6. This Court has personal jurisdiction over Defendants because, on information and belief, Defendants target business activities toward consumers in the United States, including Illinois. Defendants sell to Illinois residents and other United States consumers by setting up and operating e-commerce stores through online platforms. Defendants offer shipping to the United States, including Illinois, and accept payments in U.S. dollars from U.S. bank accounts. On information and belief, Defendants have sold and continue to sell apparel with unauthorized copies of Roadget's copyrighted works to residents of Illinois. Defendants have wrongfully injured Roadget in the state of Illinois.

[Dkt. 8 ¶¶ 4, 6.] To dispute Roadget's jurisdictional allegations, Defendants submit declarations in Chinese with certified translations that assert, in relevant part:

> 5. After a review of sales records of the Accused Storefront maintained on TEMU.com, and to the best of my knowledge and belief, the Company has never sold or distributed any units of the product referenced in the Plaintiff's Complaint to any person in the State of Illinois through the Accused Storefront. The product referenced in the Plaintiff's Complaint has already been de-listed.

6.    The Company has not engaged in any targeted advertising or promotions of the product referenced in the Plaintiff's Complaint to residents of Illinois.

7.    The Company does not have any bank accounts, office facilities, business operations, employees, agents or inventories in the State of Illinois.

[Dkt. 88-1 at 3; *see generally id.* (declarations from all six Defendants).]

The Court takes Defendants' declarations as true, but it also takes Roadget's allegations as true to the extent they are not contradicted by the declarations. *See Curry*, 949 F.3d at 393; *Swanson*, 411 F. App'x at 915. Taken together, Defendants' evidence contradicts Roadget's allegations that Defendants have sold or distributed the allegedly infringing products at issue in this case to Illinois or have targeted Illinois with marketing efforts. [*Contra* Dkt. 8 ¶ 6.] The declarations also deny owning property or conducting business operations in Illinois. Defendants do not, however, deny that, in the course of their e-commerce business, they sell or ship other products to Illinois, or that they market other products in Illinois. [*Compare id.* ¶ 4, *with* Dkt. 88-1.] Therefore, for purposes of analyzing whether Roadget has made out a *prima facie* case of personal jurisdiction, the Court concludes that Defendants do business in Illinois with their online storefronts generally, but that they have not sold or marketed the products at issue here in Illinois.

### 3.    Application

Defendants argue that because their evidence shows that "they did not make sales of the accused products in Illinois," Roadget has not met its burden of making a *prima facie* showing that Defendants are subject to personal jurisdiction in Illinois.

6

[Dkt. 86 at 4.][2] Roadget responds that the declarations Defendants supply "raise more questions than answers" and call into question the reliability of those declarations. [Dkt. 111 at 4.] It asks at least for the opportunity to conduct jurisdictional discovery into Defendants' jurisdictional contacts. [*Id.* at 4–5.] For a slightly different reason, the Court agrees with Roadget that Defendants' declarations leave open a dispute about whether the Court can exercise personal jurisdiction.

Defendants suggest that they are not subject to personal jurisdiction unless they sold the allegedly infringing products to customers in Illinois. [Dkt. 86 at 4–5.] That is a slightly too narrow view of the scope of specific personal jurisdiction. To support the exercise of specific jurisdiction, a suit "must arise out of or relate to the defendant's contacts with the forum," but the relationship need not be strictly causal. *Ford*, 592 U.S. at 359–62 (cleaned up). In *Ford*, the Supreme Court interpreted its longstanding personal jurisdiction precedent to mean that a claim may "relat[e] to" a defendant's forum contacts without a direct causal connection. *Id.* at 362 (citation omitted). For a court to "exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State," *Walden*, 571 U.S. 277, 284 (2014), a connection that is deliberate, not "a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party of a third person," *NBA Props.*, 46 F.4th at 624 (cleaned up); *see Ford*, 592 U.S. at 359 ("The contacts must be the defendant's own choice …." (citation omitted)). The

---

[2]    Defendants do not argue that even if they have sufficient minimum suit-related contacts, exercising jurisdiction would offend due process, so the Court limits its analysis to the first two prongs of the personal jurisdiction test. *See Rogers*, 996 F.3d at 819.

key is foreseeability: "potential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions." *Tamburo*, 601 F.3d at 701 (cleaned up).

Taking Roadget's allegations that Defendants generally conduct e-commerce business in Illinois as true, there is a genuine dispute as to whether those contacts support exercising jurisdiction, even if Defendants did not sell or ship the challenged products to Illinois. Defendants' alleged contacts are similar to the contacts in *Ford*, albeit at a smaller scale. The Supreme Court held that it comported with due process for a state to exercise personal jurisdiction over Ford when Ford actively marketed its vehicles to customers in Minnesota and Montana and sold the relevant models—though not the specific cars at issue—in those states. *Ford*, 592 U.S. at 364–67. Here, the Court takes as true that Defendant sell and market products via their online storefronts to customers in Illinois, they sold the accused products through the same storefronts, and they made those products available to customers in Illinois. [*See* Dkt. 8 ¶ 4.] Perhaps the jurisdictional contacts in *Ford* were stronger than Defendants' contacts, but Roadget need only make out a *prima facie* case of jurisdiction, which the Court concludes it has done. *See Howell v. Bumble, Inc.*, 2023 WL 6126492, at *11 (N.D. Ill. Sept. 19, 2023) (reasoning similarly). Whether Roadget can prove the existence of personal jurisdiction over Defendants is a question for a later date.

Defendants offer several reasons why Roadget has not met its *prima facie* burden, but the Court does not find them persuasive. They argue that "courts in this District agree that in infringement cases like this the online retailer generally must

have sold at least one product in Illinois for personal jurisdiction to exist." [Dkt. 86 at 5 (cleaned up) (quoting *Roblox Corp. v. Bigfinz*, 2023 WL 8258653, at *1 (N.D. Ill. Nov. 29, 2023)).] And Defendants argue that Roadget's belief that they sell infringing products to customers in Illinois is insufficient to create a genuine dispute. [*Id.* (citing *Roadget Bus. Pte. Ltd. v. Schedule A*, 2024 WL 1858592, at *3 (N.D. Ill. Apr. 29, 2024)); *see also* Dkt. 119 at 2–4.] The Court agrees with both propositions, but neither changes the outcome. Roadget's belief and speculation about other products does not create a dispute that requires an evidentiary hearing to resolve, *see Hyatt*, 302 F.3d at 713, and Defendants are correct that they must have done more than merely offer products for sale in Illinois to be subject to specific jurisdiction. [*See* Dkt. 31 at 4 n.1.] But Roadget alleges, and Defendants do not dispute, that they conduct e-commerce business in Illinois generally. [Dkt. 8 ¶ 4.] That is more than a mere offer to sell, and *Ford* holds that contacts need not be strictly causal—a claim *arises out of* sales to the forum state if that sale itself is actionable, but a claim may sometimes *relate to* sales of other goods in that forum. *See* 592 U.S. at 362. The fact that Defendants conduct e-commerce business in Illinois is enough for a *prima facie* case that Roadget's claims regarding other products Defendants sell from the same online storefronts relate to Defendants' jurisdictional contacts with Illinois.

Defendants cite *Vortex, Inc. v. Schedule A*, 2023 WL 7386059, at *1 (N.D. Ill. Nov. 8, 2023), to support their argument [*see* Dkt. 86 at 5 & n.4], but that case is distinguishable. *Vortex* analyzed whether there was personal jurisdiction over Alipay entities that held funds for Schedule A defendants. 2023 WL 7386059, at *1. The

plaintiff failed to make out a *prima facie* case of personal jurisdiction because it offered no evidence that the entities facilitated transactions between the defendants and customers in Illinois. The Court did not require evidence that the entities had facilitated transactions of the infringing products specifically. *See id.* at *4 ("If there were evidence that Alipay MS acted as an intermediary for transfers of funds between Defendants and Illinois customers, the Court would have no trouble concluding that Vortex made out a *prima facie* case of personal jurisdiction over Alipay MS. In that case, Alipay MS would have chosen to hold itself out as a company that would maintain accounts for sellers who sold products through the Alipay app, including customers in the United States."). Instead, it held that offers to sell products were insufficient because the Alipay entities had no control over the offers and had not engaged in tortious conduct. *See id.* ("Offers to sell products may be sufficient if they are tortious, but Alipay MS is one step removed from any offer to sell infringing products here because Defendants, not Alipay MS, made those offers. Even if such offers to sell support personal jurisdiction against the offerors, personal jurisdiction cannot be based on the unilateral activity of another party or a third person." (cleaned up)). Thus, *Vortex* acknowledged that something other than sales of infringing products to the forum might support a *prima facie* case of personal jurisdiction. Roadget's allegations that Defendants do business in Illinois generally suffices.[3]

---

[3] The other cases Defendants cite are not to the contrary. Each contemplates at least the possibility that contacts other than sales of the infringing product can support personal jurisdiction. *See Roblox*, 2023 WL 8258653, at *1 ("It is possible that a defendant may have minimum contacts with Illinois other than through sales, but Plaintiff does not contend that is true for Bigfinz."); *MSM Design & Eng'g LLC v. Schedule A*, 2021 WL 3187706, at *3 (N.D.

Because Roadget has made out a *prima facie* case of personal jurisdiction over Defendant Nos. 2, 4, 12, 17, 23, and 25, the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is denied. [Dkt. 85.][4] The dismissal is without prejudice to renewing these jurisdictional arguments after discovery. *See In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022) ("A plaintiff must be able to establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." (cleaned up)). Not all Defendants challenged personal jurisdiction, and the Court does not intend to hold up the case while adjudicating the issue of personal jurisdiction over these six Defendants, so jurisdictional discovery will occur alongside fact discovery. The Court will, however, consider proposals to streamline final resolution of the jurisdictional issue to ensure that the litigation proceeds efficiently.

## B. Sufficiency of the Allegations

Next, Defendants argue that the complaint fails to sufficiently allege facts that, if true, would allow Roadget to recover exemplary damages or attorney's fees against the Defendants that joined the motion. [Dkt. 86 at 7, 9–11.] A subset of Defendants also argue that Roadget has failed to allege sufficient facts to support an award of

---

Ill. July 28, 2021) ("None of Plaintiff's allegations suggests that Defendant has shipped any products to this forum. Nor is there any suggestion that Defendant has a preexisting business relationship with this forum."); *Rubik's Brand, Ltd. v. Schedule A*, 2021 WL 825668, at *3–4 (N.D. Ill. Mar. 4, 2021) ("To be sure, evidence of extensive sales through an interactive website may suffice to show that a defendant has targeted the jurisdiction at issue …. But a miniscule number of transactions won't do. … Here, we don't even have that much. Yoyoly has averred that it has made no sales to Illinois residents." (cleaned up)).

[4]     Because Roadget has satisfied its initial burden of showing minimum contacts, the Court does not reach its alternative argument about Rule 4(k)(2). [*See* Dkt. 111 at 5–7.] The Court takes no position on whether this Rule applies or how it may affect the analysis if the Court makes a final ruling on personal jurisdiction after discovery and possibly a hearing.

statutory damages. [*Id.* at 8–9.][5] Defendants ask the Court to dismiss these parts of the complaint for failure to state a claim under Rule 12(b)(6) or in the alternative to strike these requests under Rule 12(f). The Court declines to do so.

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Some courts have held that striking categories of damages that are unavailable as a matter of law is improper. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010) ("We … hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."); *see also, e.g.*, *Sokolova v. United Airlines, Inc.*, 2019 WL 1572555, at *4 (N.D. Ill. Apr. 11, 2019). The Court need not take a firm stand on this issue. Ruling on a motion to strike is a matter of discretion because the Court "may" strike material from a pleading. *See Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1142 (7th Cir. 2009); *Allgood v. CNA Int'l, Inc.*, 2024 WL 1530466, *4 (N.D. Ill. Apr. 9, 2024); *cf. Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, 2021 WL 767619, at *11 (N.D. Ill. Feb. 26, 2021) ("[T]he unavailability of the remedy does not mean that the demand should be snipped from the pleading."). For the reasons explained next, the Court would not exercise that discretion to strike parts of Roadget's claims for relief.

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022). The Court takes the well-pleaded factual allegations as true and draws inferences in favor of the

---

[5]     Defendant Nos. 2, 4–6, 9–10, 14–19, 22–27, and 29–31. [Dkt. 86 at 8; *see* Dkt. 128.]

plaintiff. *Id.* To survive dismissal, "a complaint must state a claim to relief that is plausible on its face." *Id.* (cleaned up). Defendants do not seek dismissal of Roadget's entire copyright infringement claim, but only certain remedies Roadget seeks. [Dkt. 119 at 8 n.3.] They point out that courts have dismissed demands for remedies that are legally precluded or insufficiently supported by factual allegations. [*Id.*] *See, e.g.*, *Southall v. Force Partners, LLC*, 2021 WL 3883082, at *3 (N.D. Ill. Aug. 31, 2021) ("It is atypical to deploy a dismissal motion to knock out a form of damages or to challenge a plea for attorneys' fees. But if a statute sets certain requirements for damages, then a Rule 12(b)(6) motion can target a request for a particular form [of] damages if the complaint fails to adequately plead facts necessary to support that form of damages." (citing *Whittlestone*, 618 F.3d at 974–75)).

The Court concludes that this is not the right time to consider whether Roadget may be entitled to the remedies Defendants ask the Court to dismiss. First, if the Court did grant the motion to dismiss these remedies, it would be without prejudice because a plaintiff ordinarily receives at least one opportunity to amend a complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022).[6] So even if Defendants' motion were successful, it would not close the door on these issues without at least one more round of briefing on a motion to dismiss. Second, if the Court dismissed the claims for these remedies but discovery turned up evidence to support them, Roadget could seek leave to amend its complaint, which the Court would be inclined to grant.

---

[6] It is undisputed that "punitive" damages are unavailable under the Copyright Act; Roadget clarifies that it seeks "enhanced" damages for willful infringement. [Dkt. 111 at 10–11.] If Roadget files an amended complaint, it should correct this terminology.

Third, dismissing these demands now would not impact the scope of discovery. With or without its requests for these remedies, Roadget will seek to learn when any infringement began, and the circumstances and scope of the infringement. It does not appear that the presence or absence of a demand for attorney's fees, for example, will affect the material that is discoverable. Fourth, this is a federal question case, with no amount in controversy requirement. 28 U.S.C. § 1331. Therefore, Roadget's ability to recover certain categories of damages does not implicate this Court's jurisdiction, as it would if this was a diversity of citizenship case. *See Sykes v. Cook, Inc.*, 72 F.4th 195, 205–07 (7th Cir. 2023).

The better approach, in the Court's view, is to address Roadget's potential entitlement to the challenged remedies on an evidentiary record, not allegations. Now that Roadget has clarified that it seeks enhanced damages, not punitive damages, the question for each category of relief is whether it can be supported by evidence, rather than whether it can be recovered as a matter of law. The Court is confident that the parties can efficiently resolve the sufficiency of Roadget's evidence on these remedies. Defendants might, for example, serve an interrogatory asking Roadget to state the evidence that it contends entitles it to these remedies. *Cf. Aylin & Ramtin, LLC v. Barnhardt*, 2022 WL 658786, at *3 (N.D. Ill. Mar. 4, 2022) (proposing a similar approach in the context of defenses). If it will streamline the litigation, the Court may permit an early motion for summary judgment regarding remedies that does not preclude a later filing. *See Hamilton*, 2021 WL 767619, at *11.

14

For the foregoing reasons, the motion to dismiss or to strike Roadget's demand for exemplary damages, attorney's fees, and statutory damages [Dkt. 85] is denied. The denial is without prejudice to moving for summary judgment at an appropriate time after the relevant discovery is taken.

### C.    Motion to Sever

Finally, the Court turns to the motion to dismiss or sever for misjoinder under Rule 21. [Dkt. 107.] *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). The primary remedy Defendants request is dismissal without prejudice. [Dkt. 108 at 2.] The Court rejects this proposition out of hand. The Seventh Circuit has made clear that dismissal for misjoinder is inappropriate if it will prejudice the plaintiff. *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) ("[I]n formulating a remedy for a misjoinder the judge is required to avoid gratuitous harm to the parties …."). Roadget notes that if the Court dismisses misjoined Defendants, even without prejudice, the preliminary injunction that is now in place will be lifted. [Dkt. 123 at 12.] The Court found that Roadget had a sufficient likelihood of success on the merits at the TRO stage, and the Defendants who move to dismiss agreed to the entry of a preliminary injunction. [Dkt. 83, 84.] Allowing the injunction to dissolve could inflict gratuitous harm on Roadget, which the Court must avoid when fashioning a remedy for misjoinder. *Elmore*, 227 F.3d at 1012. Thus, the question is the alternative remedy Defendants seek, severance, is appropriate.

Rule 20(a)(2) provides that defendants may be joined in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Like other joinder rules, Rule 20 is "broad, giving district courts considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes. Still, there are limits." *UWM Stud. Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018). Those limits are both legal and prudential. First, Rule 20 must authorize joinder as a matter of law, *see Dorsey v. Varga*, 55 F.4th 1094, 1103–04 (7th Cir. 2022) (considering whether joinder was legally permissible when the district court believed that Rule 20 forbade joinder), although this inquiry does not entail the application of bright-line rules, *cf. Ross ex rel. Ross v. Bd. of Educ.*, 486 F.3d 279, 284 (7th Cir. 2007) (explaining in the context of Rule 13(a) that "there is no formalistic test for determining whether suits arise out of the same transaction or occurrence). Second, the Court must, in its discretion, determine that joinder is appropriate. *See UWM*, 888 F.3d at 863–64.

Schedule A cases inherently test the limits of proper joinder. Plaintiffs often name double- or even triple-digit numbers of defendants in a single action. *See, e.g.*, *Estée Lauder Cosms. Ltd. v. Schedule A*, 334 F.R.D. 182, 186 (N.D. Ill. 2020); *Bose Corp. v. Schedule A*, 334 F.R.D. 511, 512 (N.D. Ill. 2020). Roadget named 31 Defendants [*see* Dkt. 8], relatively modest by Schedule A standards, and it has filed multiple actions—nine, at last count—rather than lump all alleged counterfeiters

16

together in a single case. [Dkt. 126 at 5.] The Court takes these efforts as a good faith attempt to stay within the bounds of permissible joinder while avoiding incurring unnecessary filing fees and other expenses as Roadget combats "mass infringement" of its copyrights. [Dkt. 123 at 4–5.] *Compare, e.g.*, *Estée Lauder*, 334 F.R.D. at 186 (noting a complaint that named 774 defendants). Even so, two other courts have recently disallowed joinder in similar cases. *Roadget Bus. Pte. Ltd. v. Schedule A*, 2024 WL 1858592 (N.D. Ill. Apr. 29, 2024) (Ellis, J.); *Roadget Bus. Pte. Ltd. v. Schedule A*, —F. Supp. 3d—, 2024 WL 2763735 (N.D. Ill. May 30, 2024) (Bucklo, J.).

Whether joinder is legally permissible here is a difficult question, as would be the question of whether to permit joinder if it were proper. The Court starts and ends with the legal question, concluding that Rule 20 does not permit Roadget to join the Defendants who challenge joinder in a single action. The Court therefore does not reach the question of whether it would permit joinder as a matter of discretion.

### 1. Roadget's Allegations

The Court begins by describing the facts supporting joinder that appear in the complaint as well as Roadget's response brief. [Dkt. 8, 123.] While arguments in briefs are no substitute for allegations or evidence, if Roadget could fix a joinder problem by amending its complaint to include the allegations it presses in its brief, the Court would grant it leave to do so. *Cf. Zimmerman*, 25 F.4th at 494.

Roadget alleges that its "affordable clothes and original designs … have taken the Internet by storm—and inspired many copycats on e-commerce platforms." [Dkt. 8 ¶ 1; *see id.* ¶ 10 (noting that the Shein app was the most-downloaded shopping app on Apple's app store in 2021 and the most-downloaded app of any kind in 2022).]

17

"Defendants are business entities who … reside mainly in foreign jurisdictions" and use one or more aliases to advertise and sell Roadget's copyrighted products. [*Id.* ¶¶ 1, 4.] Defendants numbered 31 online sellers (some of which are no longer parties) that allegedly infringed one of eight copyrights, seven designs for women's clothing and one plush bear. [*Id.* ¶¶ 12–13, 22, Exh. A.]

The complaint does not contain an allegation that Defendants coordinate their infringement, but Roadget develops this theory in its brief, adding allegations about the e-commerce platform Temu's involvement:

> Roadget's claims against the moving Defendants arise out of the same occurrence: the mass infringement of Roadget's copyrights on the Temu e-commerce website. Sellers on Temu compete directly with Roadget …. The infringement of Roadget's copyrights on Temu has been widespread; to date, Roadget is aware of over a hundred infringing product listings on Temu. The proliferation of these infringing product listings shows that this is the same occurrence; sellers on Temu have realized that they can profit from copying Roadget's product listings and that the more infringers there are, the more difficult it is for Roadget to do anything to stop them.

> [E]vidence uncovered through Roadget's efforts to curtail mass infringement of its copyrights on Temu has revealed that Temu exercises significant control over its sellers, dictating aspects of their product listings, including the prices and item descriptions. This degree of coordination is unlike other online e-commerce websites such as eBay or Amazon where individual sellers simply upload product listings at will. … [T]here is a swarm of infringement, and the additional thread that ties the various Defendants together is the coordinating role of Temu.

> The Schedule A cases against Temu have unusual features that the Court has itself seen that support an inference of coordination. … [T]he defendant sellers on Temu … have routinely appeared and vigorously defended. Notably, Defendants disclaim any coordination in a series of declarations that make such disclaimers in the same language from one declaration to the next. And … the eventual counsel for most of the defendants to date has repeatedly appeared an amicus to challenge the scope of the TRO request before the defendants have even been publicly

identified, with the promise of a "high likelihood that the amicus Firm will come to represent Temu merchants accused in this action"—a promise on which counsel has delivered each time it was made. Notably, this case involves sellers on non-Temu platforms as well, but counsel did not suggest any likelihood of representing such sellers.

[Dkt. 123 at 4–7 (cleaned up).]

## 2.    Same Series of Transactions or Occurrences

The first issue is whether Roadget's claims against each Defendant arise out of a series of transactions or occurrences within the meaning of Rule 20(a)(2)(A). The Seventh Circuit has not authoritatively construed this phrase in the context of Rule 20, *see Bose*, 334 F.R.D. at 513 n.1, but other circuits have interpreted it to parallel Rule 13's language, *see, e.g.*, *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 321 (4th Cir. 2021). "[I]ndependent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action. The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *EMC*, 677 F.3d at 1358; *accord ABS Global, Inc. v. Inguran, LLC*, 914 F.3d 1054, 1064 (7th Cir. 2019) (stating, in the Rule 13 context: "To determine whether a claim arises from 'the same transaction or occurrence,' this circuit uses the 'logical relationship' test, which requires us to examine the factual allegations underlying each claim." (quoting *Burlington N. Ry. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990)). Both sides likewise agree that the logical relationship test applies to Rule 20(a)(2)(A). [Dkt. 108 at 5; Dkt. 123 at 3.]

The Court concludes that Roadget's claims arise out of a series of transactions or occurrences. Roadget's response brief asserts that Temu, the e-commerce platform

Defendants use, "exercises significant control over its sellers, dictating aspects of their product listings, including the prices and item descriptions," unlike sites "such as eBay or Amazon where individual sellers simply upload product listings at will." [Dkt. 123 at 6.] Further, Roadget argues that the fact that many Temu merchants engage the same counsel and make similar arguments, and the fact that counsel has appeared in cases including this one at the TRO stage prior to the defendants' identities being disclosed, supports an inference of coordination. [*Id.* at 6–7.][7] The Court agrees that if these facts were alleged, they would satisfy Rule 20(a)(2)(A). If there is coordination between the platform and the sellers means that there will be "substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *EMC*, 677 F.3d at 1358. Such coordination would also make the alleged infringement here more like a "swarm"—"injuries in the aggregate" that harm the plaintiff in the same way, *see Bose*, 334 F.R.D. at 515–17—than distinct instances of infringement by independent actors, as in many Schedule A cases.[8]

Defendants offer several arguments in support of the opposite conclusion. They cite other Schedule A cases where courts held that alleging similar infringement was

---

[7]    Like Roadget, the Court does not mean to suggest that retaining the same counsel or counsel's appearance as amicus curiae at the TRO stage is improper, just that those facts suggest a closer relationship between Temu and its merchants (or between merchants) than in many Schedule A cases. [*See* Dkt. 123 at 7.]

[8]    *E.g.*, *Estée Lauder*, 334 F.R.D. at 187 ("Committing the same type of violation in the same way does not link defendants together for the purpose of joinder." (cleaned up) (quoting *AF Holdings, LLC v. Does 1-1508*, 752 F.3d 990, 998 (D.C. Cir. 2014)); *Tang v. Schedule A*, 2024 WL 68332, at *2 (N.D. Ill. Jan. 4, 2024) ("Essentially, Plaintiff's complaint boils down to a claim that the defendants infringed on his design patent in the same way. That is not sufficient to link one defendant's infringement to another as part of the same transaction, occurrence, or series of transactions or occurrences." (cleaned up)).

insufficient to make joinder proper under Rule 20(a)(2)(A), including Judge Ellis's Roadget opinion. [Dkt. 108 at 6–7.] The Court agrees that similar or even identical infringement by independent actors does not, standing alone, make infringement part of a common series of transactions or occurrences, but the facts Roadget adds in its response go further, suggesting coordination. Neither Judge Ellis nor Judge Bucklo considered whether those kinds of allegations could support joinder. *Roadget*, 2024 WL 1858592, at *6 (Ellis, J.) ("Courts in this district generally agree that alleging that multiple defendants have infringed on the same copyright in the same way does not create the substantial evidentiary overlap required to find a similar transaction or occurrence. … Where courts in this district have found joinder of multiple defendants in copyright or trademark cases appropriate, the plaintiffs provided more evidence tying the defendants together than what Roadget has presented."); *Roadget*, 2024 WL 2763735, at *3 (Bucklo, J.) ("Plaintiff calls this case one of 'mass infringement' concerning the same platform (Temu) and the same harm (copyright infringement) inflicted upon the same entity (plaintiff). But these connections suggest nothing more than separate instances of infringement attributable to different defendants, not events arising out of the same transaction or occurrence.").

Next, Defendants take on the coordination point, arguing that the additional facts in Roadget's response do not "show or even suggest, any coordination of infringement or coordination of product listings among Defendants," which with one exception are unaffiliated entities. [Dkt. 126 at 2–3; *see* Dkt. 108 at 6 n.6 (noting that Defendant Nos. 18 and 24 are affiliated).] The Court agrees that similar product

21

listings do not suggest coordination amongst Defendants and that price differences may point in the other direction [Dkt. 126 at 2–4], but neither do they preclude the chance that Defendants are coordinating. In any event, Roadget's allegations more strongly suggest coordination between Temu and Defendants [*see* Dkt. 23-1]; such coordination could exist even if Defendants are not in lockstep on price.[9]

Defendants also argue that the swarm metaphor is inapt in this situation. [Dkt. 126 at 2.] They are correct that the mechanics of how the infringement—a BitTorrent swarm—operated in *Bose*, 334 F.R.D. at 515–16, are considerably different than the alleged infringement here, the straightforward copying of protected designs. *Cf. Roadget*, 2024 WL 2763735, at *3 (Bucklo, J.) ("*Bose* is distinguishable from the circumstances here where the claims are of distinct infringement of various copyrights, not a single, well-known trademark. Indeed, the same judge who authored Bose found it inapplicable to a later case which, like this one, dealt with instances of infringement by distinct competitors." (cleaned up)); *Roadget*, 2024 WL 1858592, at *6 (Ellis, J.) ("Roadget has not argued or provided any suggestion that its harm arose

---

[9]     Defendants argue that the evidence Roadget cites contains two layers of hearsay and should not be given any weight. [Dkt. 126 at 3 n.4.] Even if the Federal Rules of Evidence applied to an assessment of whether joinder is proper, the question is whether Roadget has alleged facts that make joinder proper, not whether it has admissible or credible evidence to prove those facts. If Roadget amends its complaint to allege based on information and belief that Temu exercises control over sellers on its platform, that would be sufficient at this stage. *Cf. UWM*, 888 F.3d at 683–64 (evaluating the complaint's allegations).

     Another piece of evidence that Roadget relies on is a spreadsheet of "revenue data collected stored, and produced by Temu," which it argues supports inferring coordination because the same evidence will apply to each Defendant. [Dkt. 123 at 8.] The Court agrees with Defendants that Temu's production of a consolidated spreadsheet does not suggest coordination among Defendants or with Temu. [Dkt. 126 at 6.] It would be logical to produce a single spreadsheet pertaining to all relevant Defendants regardless of whether they were coordinating with each other or with Temu. The Court does not rely on this spreadsheet for its conclusion that these claims arise from a common series of transactions or occurrences.

from the 'swarm' of infringement caused by Defendants, and at least the Moving Defendants have appeared here to contest Roadget's claims, so *Bose*'s reasoning does not apply."). Again, Defendants are correct, but the Court does not rely on *Bose* for its factual similarity; instead, the Court cites it to illustrate that independent actors can sometimes participate in a single series of transactions or occurrences without explicit coordination.[10]

In sum, the Court holds that if Roadget incorporates the allegations in its response into an amended complaint, those allegations will satisfy Rule 20(a)(2)(A)'s requirement that the claims against Defendants form a single series of transactions or occurrences. If Temu coordinates or directs Defendants' sales of the allegedly infringing products, then there is a logical relationship between the claims against Defendants, which stem from that central coordination. *See EMC*, 677 F.3d at 1358; *cf. ABS Global*, 914 F.3d at 1064.

---

[10]     Both Judge Ellis and Judge Bucklo also distinguished *Bose* on the ground that no defendant had appeared to contest joinder and none was likely to do so. *See Roadget*, 2024 WL 1858592, at *6 (Ellis, J.); *Roadget*, 2024 WL 2763735, at *3 (Bucklo, J.). This point is well taken, but *Bose*'s mention of "practical considerations" goes to the discretionary aspect of joinder, not the legal limits the Court is now addressing. 334 F.R.D. at 517. The only legal significance of a defendant's appearance to contest joinder involves the party presentation rule, "the proposition that parties frame the issues for decision, whereas the courts play the role of neutral arbiter of matters the parties present." *Bernacchi v. First Chi. Ins. Co.*, 52 F.4th 324, 328 (7th Cir. 2022) (cleaned up). The Court would not—and did not, at the TRO stage—*sua sponte* decide an issue of joinder not teed up by the parties unless the basis for doing so was more questionable than here. *Cf. Estée Lauder*, 334 F.R.D. at 186–87 (evaluating joinder *sua sponte* where the complaint was more sprawling).

### 3.    Common Question of Law or Fact

Rule 20(a)(2)(B) permits joinder if at least one "question of law or fact common to all defendants will arise." Roadget submits that common questions of both law and fact will arise. [Dkt. 126 at 8–9.] The Court cannot agree.

The questions of fact Roadget argues will arise are based on "[t]he coordinating role of Temu in Defendants' conduct, as well as Defendants' common use of the same e-commerce site and reliance on consolidated data from that site." [*Id.*] For example, Roadget seeks a disgorgement remedy, and it anticipates that Defendants will argue "that their deductible expenses include expenses associated with or payments made to Temu." [*Id.* at 9.] Roadget submits that "the existence of such payments and expenses, as well as the extent to which any such payments or expenses qualify as deductible expenses, present factual questions common to each Defendant who has engaged in infringement through sales on Temu." [*Id.*] The Court disagrees. If it considered these common questions of fact, it would presuppose both the existence of infringement and that Temu's fees and expenses are uniform. Neither assumption is warranted—remedial questions may not arise as to all Defendants because liability has not yet been proven, and the Court can only speculate about Temu's fee structure. Reframing the question as *whether* Temu has a uniform fee structure would not solve the problem because that question will not impact Roadget's claims or Defendants' defenses. What matters is not the fees that Defendants pay collectively but what each Defendant can deduct if a disgorgement remedy is ordered.

Roadget also argues that "the coordinating role of Temu in connection with Defendants' infringement itself presents common factual questions." [*Id.*] But why

will this question arise with respect to all Defendants? To prevail on its copyright infringement claim, Roadget does not need to prove that Defendants coordinated. In discovery, Roadget may learn whether Temu and Defendants worked in concert, but the Court holds that this is not a common question of fact that "will arise" with respect to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B). Seventh Circuit precedent indicates that a common question must be legally salient, not just a piece of information that applies to all Defendants that will come up during the case. *See Dorsey*, 55 F.4th at 1104 (explaining that with respect to an Eighth Amendment claim against all defendants "[p]roving that [the plaintiff's] injury constituted an objectively serious medical need and that each defendant was deliberately indifferent to it will necessarily involve the question of the condition of [his] back pain"); *cf. Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011) ("Whether the Cook County prison system discriminates against black employees when making promotions is a question common to all plaintiffs' claims.").[11]

---

[11] Precedent on commonality in class actions is also instructive. True, to make joinder permissible, "[t]he common question need not predominate; that's a requirement for class actions, not for permissive joinder." *Lee*, 635 F.3d at 971. But Rule 23(b)(3) requires common questions to predominate in class actions for damages; in all class actions, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That language—*sans* a predominance requirement—mirrors Rule 20's common question language.

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court interpreted "common question" in Rule 23(a)(2) to have teeth. The Court noted that the common question "language is easy to misread, since any competently crafted class complaint literally raises common 'questions.'" *Id.* at 349 (cleaned up). The Court rejected a reading of Rule 23(a)(2) so broad that it would sweep in questions like, "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?" *Id.* Instead, the Court held that a "common question" for class certification purposes is one that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "What matters …

25

As for common questions of law, Roadget argues that it will have "to prove that it is the owner of valid copyrights. The underlying legal issues regarding copyright validity and copyright ownership present many questions of law common to all Defendants." [Dkt. 123 at 9.] The Court disagrees because this case involves multiple copyrights and Defendants are each alleged to have infringed only one copyright. [*See* Dkt. 8 ¶¶ 12–13, Exh. A.] The validity of the plush bear copyright and whether a certain Defendant infringed it does not raise a common question of law with a claim that a different Defendant infringed a different copyright. [Dkt. 126 at 6.][12]

Nor do the affirmative defenses supply a common question of law that unites all Defendants. [*Contra* Dkt. 123 at 9.] The defenses are the same, but they are based on Defendants' conduct or Roadget's conduct vis-à-vis Defendants. Take, for example, the unclean hands defense, which asserts that Roadget cannot recover because it misrepresented that Defendants are unidentifiable. [*E.g.*, Dkt. 90 at 6.] Determining whether Roadget is barred from recovery on this ground will require Defendant-by-Defendant analysis of the storefronts, not a single legal answer. Roadget cites two district court opinions that found that affirmative defenses raised common questions of law. [*Id.* (citing *Rudd v. Lux Prods. Corp. Emerson Climate Techs. Braeburn Sys., LLC*, 2011 WL 148052 at *4 (N.D. Ill. Jan. 12, 2011); *Sprint Commc'ns Co., L.P. v.*

---

is … the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (cleaned up). By analogy, what matters for Rule 20(a)(2)(B) is that there is at least one question common to all defendants whose answer is likely to drive the litigation forward.

[12]     Roadget cites *Malibu Media, LLC v. John Does 1-14* for the proposition that common questions of law will arise, but there was only one copyright at issue in that case and all defendants were alleged to have infringed it. 287 F.R.D. 513, 515–16 (N.D. Ind. 2012).

*Theglobe.com, Inc.*, 233 F.R.D. 615, 617 (D. Kan. 2006)).] The Court is not saying that when parties raise the same affirmative defenses, it will never present a common question of law. But based on the specific affirmative defenses raised here, the Court cannot say that a question of law common to all Defendants will arise.

Because there is no common question of law or fact linking Roadget's claims against all Defendants, the Court holds that Rule 20 does not permit joinder as a matter of law. *See Dorsey*, 55 F.4th at 1102–03. The Court therefore does not consider whether, as a matter of discretion, it would permit Roadget to join its claims against all Defendants in a single action.

### 4. Next Steps

As the above analysis shows, based on the Court's understanding of permissive joinder requirements, Rule 20 does not allow Roadget to join its claims against all Defendants based on the complaint as currently alleged, even if the allegations in its response brief were incorporated. Before granting the motion to sever, however, the Court will give Roadget an opportunity to select how this case will move forward.

One option is to file an amended complaint. Roadget now believes that Temu itself is playing some role coordinating infringement against its copyrights. Even if it is, it does not provide a basis for joining claims against the storefront Defendants because those individual copyright infringement claims turn Defendants' conduct. If Roadget added Temu as a Defendant or added claims against the current Defendants based on their alleged coordination, it might obviate the Rule 20(a)(2)(B) problem. The Court takes no view on whether Roadget could plausibly allege such claims or whether doing so would, in fact, cure the joinder problem; all it means is that since

Roadget has not amended its complaint yet and it invokes Temu's conduct to support joinder, the Court will grant Roadget leave to amend its complaint.

Another possible option is to appeal this Court's ruling that Rule 20 does not permit joinder here as a matter of law. Under 28 U.S.C. § 1292(b), the Court may state that its "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," and permit a party to ask the Court of Appeals for permission to take an interlocutory appeal. To say that there is substantial ground for difference of opinion as to when district courts may permit joinder in Schedule A cases would be an understatement, particularly in the absence of appellate guidance. This issue also involves a controlling question of law, namely, where Rule 20 draws the legal line between "[u]nrelated claims against different defendants," which "belong in different suits," *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and claims against different defendants that district courts may, in their discretion, permit to proceed in a single action. Knowing the answer to this question may materially advance this litigation [*see* Dkt. 123 at 11 (indicating that without joinder it would be "difficult, if not impossible, for Roadget to pursue" all its claims)], as well as Schedule A litigation more broadly, which features many difficult questions of law that cry out for resolution by the Seventh Circuit.[13]

---

[13]     In a recent opinion, Chief Judge Pallmeyer discussed contested issues regarding email service in depth, then observed: "No Circuit Court of Appeals has yet directly addressed these relatively complex questions. A definitive resolution of these issues on appeal would provide some much-needed clarity, particularly in light of the mounting volume of 'Schedule A' cases against overseas defendants filed in this district every year. Whatever one's thoughts on the

If Roadget wishes to pursue the interlocutory appeal route (in lieu of amending its complaint or after doing so, if the amendment fails to cure the joinder problem), to facilitate taking the appeal, the Court would stay enforcement of a severance order until the Seventh Circuit chooses whether to accept and, if applicable, decides the interlocutory appeal.[14]

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim and for lack of personal jurisdiction [Dkt. 85] is denied without prejudice to renewing the arguments they make at a later date, as discussed in this opinion. The motion to dismiss for misjoinder or, in the alternative, to sever [Dkt. 107] is denied as to dismissal but tentatively granted as to severance. By separate order, the Court will set a deadline for Roadget to propose next steps.

Enter: 24-cv-607
Date: July 9, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

validity of electronic service, or on the Schedule A method of litigation more broadly, it is hardly fair for a Schedule A litigant's chances to rise or fall based on the identity of the judge to which that entity's case is assigned. The Seventh Circuit has already weighed in on the related question of whether foreign e-commerce vendors have sufficient 'minimum contacts' with the forum to support personal jurisdiction in Schedule A cases. A similar ruling on electronic service of process—whether in this or another case—would help future litigants avoid substantial confusion." *Peanuts Worldwide, LLC v. Schedule A*, 2024 WL 3161661, at *10 (N.D. Ill. June 25, 2024) (cleaned up). This Court wholeheartedly agrees.

[14]  If the parties jointly sought a full stay, the Court would be amenable to granting it, but it would not impose one if Defendants oppose it, given that the preliminary injunction against them remains in effect.